UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | | |
|---|---|---|
| MICHEAL PLONKA, | ) | |
| | ) | |
| Plaintiff, | ) | Case: 3:25-cv-02047 |
| | ) | |
| v. | ) | |
| | ) | |
| SILVER STAR PROTECTION GROUP, LLC, | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Micheal Plonka ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Silver Star Protection Group, LLC ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"), for Defendant's failure to pay all earned minimum wages and overtime premiums and for retaliation in violation of 29 U.S.C. § 215(a)(3).

2. Plaintiff also brings supplemental state-law claims under the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq. ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq. ("IWPCA"), including statutory retaliation claims; and common-law claims for conversion, unjust enrichment/quantum meruit (in the alternative), and negligent spoliation of evidence.

3. Plaintiff seeks unpaid wages and overtime, liquidated damages, statutory penalties, compensatory and punitive damages where available, pre- and post-judgment interest, attorneys' fees and costs, and all other appropriate relief.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as the federal questions raised herein.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

7. Plaintiff, Micheal Plonka, is a natural person, over 18-years-of-age, who at all times relevant to the allegations in this Complaint resided in Saline County, Illinois.

8. Defendant, Silver Star Protection Group, LLC, whose address is 1135 Heather Road, Deerfield, IL 60015, located in Lake County, Illinois. Illinois Secretary of State ID No. 07098227 is a domestic limited liability company specializing in the security industry that at all times material to the allegations in this Complaint was doing business in and for Lake County, Illinois.

## BACKGROUND FACTS

9. Plaintiff began working for Defendant on or about December 5, 2024, as a security officer.

10. At all relevant times, Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1) in that (a) it has had an annual gross volume of sales made or business done of not less than $500,000.00, and (b) its employees, including Plaintiff, have handled, sold, or otherwise worked on goods or materials

that have moved in or were produced for commerce, including but not limited to uniforms, radios, flashlights, mobile phones, computers, security equipment, vehicles, and supplies manufactured outside Illinois.

11. Defendant's business operations utilized instrumentalities of interstate commerce, including Paylocity (a multi-state electronic timekeeping and payroll platform), Cash App (an interstate electronic funds transfer platform), email, internet-based scheduling and communications tools, and telephones.

12. Plaintiff was, at all relevant times, an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1), and Defendant was his "employer" within the meaning of 29 U.S.C. § 203(d).

13. Plaintiff was classified as a non-exempt hourly worker, paid an hourly rate of $20.00, and did not fall within any exemption to the FLSA's minimum wage or overtime requirements.

14. The services Plaintiff performed—overnight site security, access control, patrols, incident reporting, and related protective services—were integral to Defendant's core business of providing contracted security services to clients.

15. Defendant exercised control over the manner and means of Plaintiff's work by setting his schedules and posts through Paylocity; determining his hourly rate; directing the locations, hours, and duties of his assignments; supervising his performance through site supervisors; and controlling the method and timing of wage payments.

16. Supervisory personnel, including Operations/Site Supervisor Phil Hofer and Operations Manager Justin Driscoll, had and exercised authority delegated by Defendant to

schedule or remove shifts, assign or withhold work, approve or deny time entries, and authorize or direct payments to Plaintiff.

17. Plaintiff worked overnight shifts, including scheduled hours from 11:00 p.m. to 7:00 a.m., and occasional additional daytime hours.

18. Shift scheduling and payroll were managed through Paylocity, Defendant's electronic timekeeping and payroll system.

19. However, Defendant instructed Plaintiff to not clock in for overtime hours.

20. On or about April 10, 2025, Mr. Hofer sent Plaintiff a Cash App payment totaling $150.00 labeled "for work" which was intended as compensation for 8 total overtime hours across two shifts.

21. Plaintiff was instructed not to clock back in and to continue working off the clock.

22. When Plaintiff refused to work the second 4 hour overtime block, he was instructed to return $75.00 of the $150 payment.

23. Following the wage discrepancies, Plaintiff discovered his entire April schedule had been deleted from Paylocity, making it appear as though he had never worked those shifts.

24. On or about April 30, 2025, Defendant announced the site where Plaintiff was assigned "no longer needed guards." Supervisor Phil Hofer stated that all officers would be reassigned.

25. While approximately six to seven other guards were reassigned, Plaintiff was not given any new assignments. His schedule was cleared, and he received no further work.

26. On or about May 6, 2025, Plaintiff reported the off-the-clock payment scheme to Joseph Calabrese, Human Resources & Talent Acquisition Manager, via email.

27. Mr. Calabrese responded promptly, asking for documentation.

28.     Plaintiff submitted screenshots of Cash App payments from Hofer, and his April schedule showing overnight shifts.

29.     No further communication was received from HR after this report.

30.     Mr. Calabrese employment with the company ended abruptly shortly after Plaintiff reported Defendant's unlawful wage scheme.

31.     On or about May 24, 2025, Plaintiff texted Operations Manager Justin Driscoll about receiving no assignments. Mr. Driscoll told Plaintiff to reach out to Phil Hofer.

32.     Plaintiff continued to inquire about assignments. He remained listed as "active" in Paylocity but was completely removed from scheduling.

33.     On or about June 23, 2025, after 53 days without a shift, Plaintiff emailed HR again asking: "Am I still an employee there? Paylocity says I'm active."

34.     Plaintiff received no response to this inquiry.

35.     Meanwhile, Defendant continued hiring new guards in the same region through postings on ZipRecruiter and other job platforms.

36.     Because Defendant never formally terminated Plaintiff until October 13, 2025—and continued to list him as active—he was ineligible for unemployment benefits.

37.     With no income for nearly two months and no pathway to reinstatement, Plaintiff and his wife fell behind on their mortgage and were forced to sell their home in July 2025.

38.     Defendant failed to pay Plaintiff one and one-half times his regular rate of pay for hours worked over forty (40) in one or more workweeks, including but not limited to the week of April 6–12, 2025, in violation of 29 U.S.C. § 207.

39.     Defendant failed to keep accurate records of Plaintiff's hours worked and wages paid as required by 29 U.S.C. § 211(c) and 29 C.F.R. Part 516, including by deleting or permitting

the deletion of Plaintiff's April schedule and time entries from Paylocity after he worked the shifts at issue.

40. Plaintiff complained in writing on May 6, 2025 about the off-the-clock payment scheme and improper wage and hour practices, and provided documentary support, but despite actual knowledge of the violations, Defendant willfully failed and refused to pay lawfully earned wages and overtime.

41. Defendant's violations of the FLSA were knowing and willful within the meaning of 29 U.S.C. § 255(a), as evidenced by: (a) the use of off-payroll Cash App transfers labeled "for work"; (b) the imposition of unexplained deductions that zeroed out Pay On Demand pay; (c) the deletion of April schedules/time entries; and (d) the continued refusal to pay after receiving Plaintiff's written complaint and documentation.

42. As a direct and proximate result of Defendant's FLSA violations, Plaintiff suffered damages including , unpaid overtime premiums, and an equal amount as liquidated damages, plus reasonable attorneys' fees and costs.

43. Defendant terminated Plaintiff in retaliation for reporting Defendant's unlawful wage and hour practices.

**Count I**
**Violation of Fari Labor Standard Act**
**(Failure to Pay Overtime)**

44. Plaintiff repeats and re-alleges paragraphs 1–43 as if fully stated herein.

45. Plaintiff was non-exempt and entitled to overtime compensation at one-and-one-half times his regular rate for all hours worked over forty (40) in a workweek.

46. During April 6–12, 2025, Plaintiff worked in excess of forty (40) hours (including four (4) overtime hours on April 11, 2025) but Defendant failed to pay the required overtime premium.

47. Defendant's off-payroll Cash App transfers labeled "for work" did not include the required overtime premium and were not processed through payroll and thus did not satisfy 29 U.S.C. § 207.

48. Defendant failed to keep accurate records of hours worked and wages paid as required by 29 U.S.C. § 211(c) and 29 C.F.R. Part 516.

49. Defendant's violations were willful within the meaning of 29 U.S.C. § 255(a).

50. As a result of Defendant's violations, Plaintiff has suffered damages, including lost wages.

51. Additionally, Plaintiff has been forced to retain counsel and incurred fees and costs in bringing this action.

### Count II
### Violation of Fair Labor Standards Act
### (Retaliation)

52. Plaintiff repeats and re-alleges paragraphs 1–43 as if fully stated herein.

53. Plaintiff engaged in protected activity on May 6, 2025, by reporting wage violations to HR and supplying documentation.

54. Thereafter, Defendant took adverse actions, including: removing all work assignments while keeping Plaintiff "active"; falsely claiming he resigned; ignoring his inquiries; and ultimately terminating him on October 13, 2025.

55. The temporal proximity and pattern of conduct support a causal connection between Plaintiff's protected activity and the adverse actions.

56. Defendants' unlawful retaliation caused Plaintiff economic and other harms, including loss of income and benefits and foreclosure-related losses.

57. As a result of Defendant's violations, Plaintiff has suffered damages, including lost wages, emotional distress, mental anguish, humiliation, embarrassment, and loss of enjoyment of life.

58. Additionally, Plaintiff has been forced to retain counsel and incurred fees and costs in bringing this action

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

    a. Back pay with interest;

    b. Payment of interest on all back pay recoverable;

    c. Front pay;

    d. Loss of benefits;

    e. Liquidated damages;

    f. Compensatory and punitive damages;

    g. Reasonable attorneys' fees and costs;

    h. Award pre-judgment interest if applicable; and

    i. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 10th day of November 2025.

**/s/ *Travis P. Lampert***
**TRAVIS P. LAMPERT, ESQ.**
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 581-5456
Fax (630) 575 - 8188
tlampert@atlastlawcenter.com
*Attorney for Plaintiff*